UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK GEORGE,                    )
                                              )

                     Plaintiff,        )
                                                )

                         vs.           )      1:12-cv-00711-SEB-MJD
                                                )

UTILITY TRAILERS OF           )
INDIANAPOLIS, INC. d/b/a Utility      )
Peterbilt,                            )
                                                )
                      Defendant.    )

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant Utility Trailers of Indianapolis, Inc. d/b/a Utility Peterbilt's Motion for Summary Judgment [Dkt. No. 55 (brief at Dkt. No. 56).] For the reasons detailed herein, Defendant's Motion is <u>DENIED</u>.

### Factual Background and Undisputed Facts

The following is a summary of the facts supported by admissible evidence and viewed with reasonable inferences in favor of Plaintiff Mark George.

**Mr. George's Employment and Positions at Utility Trailers.**

Plaintiff Mark George worked at Utility Trailers in its Indianapolis location for over twelve years. [George Dep. at 21-22, 49.] Mr. George first began working for Utility Trailers in 1993, left to pursue other employment on several occasions, and most recently began working for Utility Trailers again in January 2005. [*Id.* at 21-22, 26-28, 42-45] Mr. George was hired to work as a Service Writer in the Service Department on the Second Shift (3:30 pm to midnight) under the direction of Howard Elmore. [*Id.* at 31, 43.] Prior

to his January 2005 start, Mr. George received a new hire packet from Mr. Elmore, which included an employee handbook. [*Id.* at 73-74.] Mr. George signed a receipt indicating that he had received the handbook. [George Dep. at 77-78, Ex. 1.] Mr. George also received a copy of the Family and Medical Leave Act ("FMLA"), which he acknowledged in writing. [*Id.* at 89-90, Ex. 3.] Mr. George did not retain a copy of the new hire packet and neither did Utility Trailers. [*Id.* at 72-73; Dkt. No. 56-2 (Supplemental Declaration of Steve Riddle) at ¶ 7.]

Defendant contends that an authentic copy of the employee handbook given to Mr. George was submitted as Exhibit C. [Dkt. No. 56 at 3.] Although Mr. George does not recall reading the handbook, Plaintiff contends that inconsistencies exist between the signature pages admittedly containing Mr. George's signature and Exhibit C that make Exhibit C unreliable and unlikely the same employee handbook given to Mr. George. [George Dep. at 82-83 (does not recall reading handbook); Dkt. No. 59 at 21-22.]

When Mr. George returned to work at Utility Trailers in 2005, he had a permanent twenty-pound lift restriction as a result of back surgery and recurring pain, which prohibited him from lifting anything over twenty pounds. [George Dep. at 62-63, 95.][1] Mr. George communicated this lifting restriction to Mr. Elmore and to Debbie Brennan, the Utility Trailers' Human Resources Director. [*Id.* at 63.] The Service Writer position wrote up information on trucks, took customer complaints, wrote work orders, scheduled

---

[1] Mr. George had a second surgery in 2009 and returned to work with the same twenty-pound lifting restriction that his treating physician indicated Mr. George would have for life. [George Dep. at 94-95, 77.]

trucks for service, billed customers, collected monies, advised customers of work in progress and took care of shop needs. [*Id.* at 43.] Mr. George worked in this position for approximately two and a half years. [*Id.* at 46-47.]

In 2007, Mr. George transferred from the Service Department to the Parts Department and took a First Shift position working behind the parts counter from 7:00 am to 3:30 pm. [George Dep. at 23, 48.] In the Parts Department, heavy parts were moved with a forklift or a two-wheel cart. [Steve Riddle Dep. at 16.] Utility Trailers encouraged employees to get help lifting heavy objects regardless of whether they were subject to a lifting restriction. [George Dep. at 92.] Mr. George always had assistance lifting heavy parts and was able to do all of the essential elements of the job without violating his twenty-pound lifting restriction. [*Id.* at 67.]

**Mr. George's March, 2010 Ladder Accident.**

On March 24, 2010, Mr. George fell off a ladder at work and sustained injuries, aggravating his preexisting back injury. [George Dep. at 95, Ex. 4.] Dwayne Johnson, the Warehouse Manager, witnessed the fall and promptly informed Ms. Brennan about the accident. [*Id.* at 97-98.] Ms. Brennan came to the scene of the accident and decided that Mr. George needed to go to Prompt Care immediately. [*Id.* at 98.] Ms. Brennan drove Mr. George to Prompt Care and waited while he was treated. [*Id.* at 98-99.]

After the accident, Mr. George went to his treating physician, Dr. Spomar. [George Dep. at 127.] Dr. Spomar had performed Mr. George's previous back surgery in November 2009. [*Id.* at 94 127.] Dr. Spomar prescribed several weeks of extensive physical therapy for Mr. George and ordered him to stop working entirely. [*Id.* at 127, 96, 98, 100-01, 158-

59.] Within two days following the ladder accident, Mr. George delivered Dr. Spomar's paperwork to Ms. Brennan. [*Id.*] The parties dispute whether Mr. George sought leave while he was unable to work. Mr. George claims that he asked Ms. Brennan if he should have FMLA leave, and Ms. Brennan instructed him that he did not need it for this particular accident and responded that "[b]ecause you're only going to be gone a few weeks, you should be fine." [*Id.* at 9, 126.] Defendant claims that Mr. George "never asked for leave, of any kind, during this time" and that Ms. Brennan "did not have any reason to believe that the FMLA was implicated." [Dkt. No. 56 at 7 (citing George Dep. at 127, 137, 9, 128) ("Q. After your ladder fall in 2010, . . . in your conversations with Debbie did you ever actually ask for FMLA leave specifically? A. No. Q. Did you ever ask for a leave at all? A. No.").] Defendant's termination letter to Mr. George specifically referenced Mr. George's "leave of absence." [George Dep. at 101, Ex. 4.]

On April 9, 2010, approximately two weeks after the ladder accident, Mr. George contacted Ms. Brennan to see if his position would be left open until he was released to work on June 2, 2010. [Riddle Dep. at 30.] On April 12, 2010, Ms. Brennan sent an email to Nammy Eskar, Utility Trailers' General Manager, updating him on Mr. George's condition. [Riddle Dep. at Ex. 3.] In response, Mr. Eskar wrote to Ms. Brennan that she should "[t]ell him the only option open for him is 11-8 shift." [*Id.*]

The parties dispute whether Mr. George rejected Utility Trailers's 11-8 shift offer or whether that offer was rescinded. Mr. George claims that on April 14, 2010, Mr. Elmore called Mr. George to offer him the Service Writer, Second Shift position upon his return (despite that Mr. George was working a Counter Parts position on the First Shift prior to

the ladder accident).  [George Dep. at 52, 57, 39-40.]  Mr. George alleges that Mr. Elmore

told him he had until Friday to make his decision on the job offer.  [*Id.* at 50-51.]  Mr.

George claims that he went to Utility Trailers to accept the position on Friday and was

informed by Mr. Elmore that the offer was taken off the table.  [*Id.* at 59, 51.]  Defendant

claims that Mr. George rejected the Second Shift position because it interfered with his

lawn care business.  [Riddle Dep. at 24.][2]

**Mr. George's Termination from Utility Trailers.**

On May 27, 2010, Utility Trailers sent Mr. George a letter informing him that

"during your leave of absence we had to fill your job position due to the fact we did not

have enough personnel to cover the front counter.  If you are completely released from

your doctor wherein you can do manual labor, (lifting, etc.), you may reapply for a position

within the parts department if one is available."  [George Dep. at 101, Ex. 4.]  At that time,

Ms. Brennan retroactively cancelled Mr. George's health insurance benefits effective

March 31, 2010.  [Pltf. Ex. 6.]

After receiving the May 27, 2010 letter, Mr. George called Ms. Brennan to inquire

about the termination and available positions.  [George Dep. at 107-08.]  Plaintiff alleges

that Ms. Brennan "informed George that the Company now had a thirty-pound lifting

requirement for all positions."  [Dkt. No. 59 at 8 (citing George Dep. at 107-08, 152).]

Defendant disputes this, stating that "Utility Trailers had a 30-pound lift requirement for

---

[2] This position and shift is also referred to by the parties as "split shift", meaning it is between the
first shift and second shift.  [*See, e.g.,* Riddle Dep. at 24.]

the parts counter position for decades prior to the move of Plaintiff into the position in 2007 or 2008." [Dkt. No. 56 at 6 (citing Riddle Supp. Dec. at ¶ 9).] Defendant claims that a lifting test is required at the time of hiring, although Mr. George does not recall ever taking a lift test. [*Compare* Pltf. Ex. 3, Riddle Dep. at 18 *with* George Dep. at 107-08.]

Mr. George alleges there were between six and seven employees working in the Parts Department at the time of his termination. [George Dep. at 110.] Defendant, on the other hand, alleges that it did not have "a lot of excess personnel which could cover the parts counter over an extended period of time." [Dkt. No. 56 at 7 (citing Riddle Supp. Dec. at ¶ 10).]

Mr. George did not reapply at Utility Trailers after he was released to return to work on June 2, 2010. [George Dep. at 110-11, 122-23, 125, 187.] Mr. George did not call the company about any open positions after June 2, 2010. [*Id.* at 110-11, 123.]

## Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id*. at 255. However, neither the "mere existence of some alleged factual dispute between the

parties," *Id.*, at 247, nor the existence of "some metaphysical doubt as to the material facts," (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if

believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

## Legal Analysis

**1.     The Existence and Enforceability of an Arbitration Agreement.**

The parties have spent a generous amount of time and effort in their briefing debating whether an agreement between the parties requires the arbitration of Plaintiff's claims.  Although the parties seemingly agree that some arbitration policy was agreed to by the parties, the terms of that arbitration agreement have not been conclusively established.  This issue of compulsory arbitration as to Plaintiff's claims has been raised twice previously by Defendant.

**a.     Defendant's Previous Motion to Compel Arbitration Attempts.**

In July 2012, Defendant filed a Motion to Dismiss based on its position that a valid arbitration agreement existed between the parties.  [Dkt. Nos. 13, 14.]  Attached to Defendant's Motion was Defendant's Exhibit A, which consisted of three unnumbered pages detailing a purported arbitration agreement and a page numbered "56" and titled "Acknowledgement of and Agreement with Utility Trailers of Indianapolis Inc. Arbitration Policy."  This final page was signed both by Mr. George and Steve Riddle, President of Utility Trailers, and dated December 2004.  [Dkt. No. 14-1.]

Instead of filing a Response to Defendant's Motion, Plaintiff filed a Motion to Defer Briefing on the Enforceability of the Alleged Arbitration Agreement Pending Limited Discovery, requesting discovery to obtain and consider the fifty-five (55) pages in effect at the time of Mr. George's termination of employment in 2010 that preceded the signatures on page fifty-six (56). [Dkt. No. 20.]

A pretrial conference was held on August 22, 2012 before the Magistrate Judge and on August 30, 2012, Magistrate Judge Dinsmore issued a Minute Entry, stating in part as follows:

> The Court has reviewed Defendant's evidentiary submission in support of the motion to dismiss. [Dkt. 14-1.] The Court finds that the Rule of Completeness mandates the submission by Defendant of the entire document that Plaintiff purportedly signed by Plaintiff. Fed. R. Evid. 106. Accordingly, Defendant is Ordered to file the entire document of which page 4 of 4 of Docket No. 14-1 is the signature page by no later than **September 6, 2012**. In CM/ECF please use the Briefs, Responses and Replies event located under Motions and Related Filings Event and then choose Exhibit In Support under the Available Events.

[Dkt. No. 27.] The Order also noted that Plaintiff had agreed to withdraw those portions of his motion seeking leave to conduct discovery because "the submission by Defendant of a true and complete copy of the entire document to which [Plaintiff's] signature attaches is expected by Plaintiff to resolve the issues on which he sought discovery." *Id*. Neither Plaintiff nor Defendant filed objections to the Order of the Magistrate Judge.

On August 31, 2012, Defendant filed a second Motion to Dismiss. [Dkt. No. 25.] In support of that Motion Defendant again submitted the same Defendant's Exhibit A described above. [Dkt. No. 26-1.] In addition, Defendant filed a Declaration of Steve Riddle stating that

Utility Trailers no longer has possession of the exact employee handbook which Plaintiff signed on December 17, 2004, but that the Arbitration Policy contained within Exhibit A of Defendant's Motion to Dismiss is the same policy as was contained within the handbook which Plaintiff signed on that date, as evidenced by the other versions of Defendant's handbook which contain the same Arbitration Policy. *See* Exhibits 1, 2 and 3. (The attached Exhibits 1, 2 and 3 were made at or near the time of the occurrence of the matters set forth therein, from information transmitted by a person with knowledge of those matters, were kept in the course of the regularly-conducted business activity of Utility Trailers, and were made by the regularly-conducted activity as a regular practice.)[3]

[Dkt. No. 26-2 at ¶ 6.]  Defendant also attached three additional exhibits which appear to be various versions of Defendant's Employee Manual Guide.  [Dkt. Nos. 26-3, 26-4, 26-5.]  There was no mention in Defendant's Memorandum in Support of its Motion or the previous dispute regarding the authenticity of Exhibit A (the only document bearing Plaintiff's signature) or of the Order of the Magistrate Judge.

On September 6, 2012, Defendant tendered two supplemental exhibits in connection with its Motion to Dismiss.  [Dkt. No. 28].  In that filing, Defendant restated its position that Defendant was no longer in possession of the employee handbook which Plaintiff signed on December 17, 2004.[4]  [*Id.* at ¶ 2.]  However, "in order to fully comply with the Court's August 30, 2012 Order," Defendant tendered Exhibits C and D "which contain some of the same additional pages of Defendant's handbook already contained in Exhibits 1 and 2, with the only difference being that Exhibits C and D display Plaintiff's signature

---

[3] The Court does not understand what Mr. Riddle intends when stating "from information transmitted by a person with knowledge of those matters;" however, it seems clear that a question of Mr. Riddle's personal knowledge as to the documents he purports to authenticate may exist.

[4] In Defendant's Reply brief in support of its Motion to Dismiss, Utility Trailers explained that it no longer had the original handbook signed by Plaintiff because it was not retained when the handbook was revised the following year.  [Dkt. No. 30 at 8; Riddle Dec. at ¶ 7.]

and other handwritten text from December 17, 2004." [*Id.* at ¶¶ 2-3.]. Those pages are titled "E-Mail and Internet Policy Acknowledgment Form," "Receipt and Acknowledgement Of Utility / Peterbilt of Indianapolis Employee Manual," and "Confirmation of My Personal Awareness and Compliance with the Policy Prohibiting Employee Discrimination or Harassment." [Dkt. Nos. 28-1, 28-2.]

On September 25, 2013, after considering the designations by Defendant, we ruled as follows:

> Defendant has not to date been able to supply the necessary documentary exhibits that would allow either Plaintiff or the Court to determine conclusively whether Plaintiff actually agreed to arbitrate the dispute pending before us. The proffered Exhibit A and the assortment of other submissions do not comply with the Rule of Completeness referenced by the Magistrate Judge in his minute entry. The documents are a hodgepodge of related materials which, considered individually or together, fail to provide a basis on which the issue of arbitrability is conclusively established. Discovery may flesh out this matter, and thus should proceed. Without it, Defendant's Motion to Dismiss is at best premature and at worst unavailing. We thus <u>DENY</u> the motion to dismiss without prejudice to the filing of a subsequent motion should the outcome of discovery warrant it.

[Dkt. No. 31 at 4.]

### b. Defendant's Current Request To Compel Arbitration.

Defendant now seeks to compel arbitration based on an electronic version of Defendant's Employee Handbook authenticated by the Supplemental Declaration of Steve Riddle. [Dkt. No. 56-2 (Riddle Supp. Aff.); Dkt. No. 56-3 (electronic copy of employee handbook).] Defendant provided no explanation for why this electronic copy was only recently found or why the Company failed to comply with the Magistrate Judge's September 6, 2012 deadline to submit the entire agreement at issue. Neither does

Defendant explain the inconsistencies between Mr. Riddle's sworn statements submitted to this Court – first, that Defendant no longer possessed a copy of the exact employee handbook which Plaintiff signed on December 17, 2004, and now, that Defendant actually does possess a copy of the handbook Plaintiff signed. At a minimum, Defendant's own testimony creates a genuine issue of material fact that cannot be resolved on summary judgment.[5]

Defendant originally represented to the Court that Plaintiff agreed to an "Arbitration Policy" detailed in Docket 14-1. That "Arbitration Policy" was numbered section 12.0 and consisted of three unnumbered pages. This representation was confirmed on August 31, 2012, by the Declaration of Steve Riddle stating that "the Arbitration Policy contained within Exhibit A . . . is the same policy as was contained within the handbook which Plaintiff signed on that date, . . . ." [Dkt. No. 26-2.] Now, Defendant contends that Plaintiff agreed to the handbook submitted as Dkt. No. 56-3. We noted that this handbook has different formatting and spacing than the one previously represented to be the policy agreed to by the Plaintiff, although the substance of the arbitration provision remains the same. [*Compare* Dkt. No. 26-2 *with* Dkt. No. 56-3.] In its reply, Defendant states that Docket 56-3 was previously submitted to the Court as Docket 26-3 (in support of its Motion to Dismiss). Yet, when its Motion to Dismiss was filed, Defendant referred to Docket No.

---

[5] We find it curious that Defendant has argued that its loss of the original employee handbook received by Mr. George was the result of an asset sale that occurred *after* Mr. George filed his EEOC claim. [*See* Riddle Dep. at 5-6 (testifying that he sold Utilities Trailers in October 2011); Dkt. No. 22 at Ex . 1 (EEOC claim filed February 25, 2011).] Again, Defendant's account of the retention and existence of a genuine copy of the employee handbook agreed to by Mr. George is at best dubious.

26-3 as an "other version[] of Defendant's handbook which contain[s] the same Arbitration Policy" as the one in Exhibit A – i.e., *not* the employee handbook Mr. George signed. [Dkt. No. 26-2 (Riddle Dec.) at ¶ 6.] Certainly, if Docket 56-3 is the same as Docket 26-2, what did not pass muster in its Motion to Dismiss will again not pass muster in Defendant's Motion for Summary Judgment. Moreover, Defendant previously represented to this Court that it did not keep prior versions of the handbook when it was thereafter revised. [Dkt. No. 30 at 8.] Defendant's most recent attempt to compel arbitration has resulted in more questions than answers.

Plaintiff has identified the following differences between his alleged signature pages and the electronic employee handbook submitted as Docket 56-3[6]:

· Docket 28-2 (Employee Discrimination or Harassment Policy) contains a note "handbook010104.doc" which is not contained in Docket 56-3. [Dkt. No. 28-2; Dkt. No. 56-3 at 57.]

· Docket 28-1 (E-Mail and Internet Policy) has different formatting than Docket 56-3 at page 54, as well as different font page numbers.

---

[6] Mr. George notes that the "Acknowledgement of and Agreement with Utility Trailers of Indianapolis Inc. Arbitration Policy" form he signed states that he understands the "above" Arbitration Policy. [Dkt. No. 59 at 21.] Yet, the Docket No. 56-3 handbook shows that the Arbitration Policy appears *after* the signature page. We are not persuaded that this fact demonstrates that Docket No. 56-3 cannot possibly be the same employee handbook Mr. George received. The location of the Arbitration Policy in Docket No. 56-follows the signature page and yet the Docket No. 56-3 signature page also states the Arbitration Policy is found "above" the signature page.

- Docket 28-1 (Employee Manual receipt) has the date space in the bottom left next to employee signature and paragraphs that are not indented while Docket 56-3 at page 55 has the date in the bottom right on its own separate line and indented paragraphs.

Given these inconsistencies and Defendant's own inconsistent testimony, we cannot conclusively rule that the parties ever agreed to arbitrate the disputes before the Court.

Because Defendant has not provided conclusive evidence to establish the existence of a agreement to arbitrate the dispute before us, we need not adjudicate the parties' arguments related to the enforceability of the arbitration provision submitted in Exhibit 56-3. [*See* Dkt. No. 59 at 19-34 (arguing that Defendant's arbitration demand was waived, the arbitration agreement is an illusory promise, Plaintiff did not knowingly and voluntarily give up his right to a trial by jury and the alleged arbitration agreement deprives Mr. George of substantive rights such as a shortened statute of limitations and contains a cost-sharing provision).] In the absence of conclusive evidence of an agreement to arbitrate, we will not speculate as to the contents or legal implications of the agreement submitted by Defendant. Defendant's Motion for Summary Judgment to compel arbitration is denied.

**2.     A Genuine Issue of Material Fact Exists to Preclude the Entry of Summary Judgment on Plaintiff's ADA Claim.**

The American with Disabilities Act ("ADA") prohibits employers from, among other things, "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003) (quoting 42 U.S.C. § 12101 *et. seq.*). The ADA defines a "qualified individual with a

disability" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The determination regarding whether an individual is qualified must be made 'as of the time of the employment decision.'" *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 602 (7th Cir. 1999) (citing *Ross v. Ind. State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998)). In order to survive a motion for summary judgment, a plaintiff in a discrimination case need not "produce the equivalent of an admission of guilt by the defendant." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994). Instead, to establish a violation of the ADA, an employee must show that his disability "played a role in the employer's decision-making process and had a determinative influence on the outcome." *Schuster v. Lucent Techs., Inc.,* 327 F.3d 569, 573 (7th Cir. 2003) (citation omitted).

Mr. George claims that he was discriminated against in violation of the ADA when Defendant refused to provide him a reasonable accommodation and terminated him because of his disability. [Dkt. No. 22, Am. Compl. ¶¶ 34-35; Dkt. No. 59 at 16-19.] Mr. George also claims that Defendant violated the ADA when it implemented a thirty-pound weight lifting requirement while Mr. George was on medical leave. [Dkt. No. 59 at 18-19.] Defendant moves for summary judgment on the basis that Mr. George was not qualified to perform the essential functions of his job when he was absent from his employment. [Dkt. No. 56 at 17-21.] Defendant also argues that Mr. George cannot make a *prima facie* case of disability discrimination. [*Id.* at 21-25.]

### a. A Genuine Issue of Material Fact Exists As To Whether Mr. George's Medical Leave Was a Reasonable Accommodation for His Disability.

"Defendant accepts for purposes of this discussion here [i.e., summary judgment] that Plaintiff could be considered disabled for purposes of the ADA." [Dkt. No. 56 at 18.] Mr. George's disability is his back limitations. His ladder accident aggravated his back problems resulting in Mr. George being absent from work for eleven weeks on doctor's orders.

The parties focus on two different aspects of Plaintiff's ADA claim. Defendant argues that Mr. George was not a "qualified" individual with a disability at the time of his termination because he was not present to perform his employment duties. Plaintiff, on the other hand, focuses on whether a limited medical leave was a reasonable accommodation for his disability and argues that his termination during that leave was a violation of the ADA. We find that a material question of fact precludes the entry of summary judgment on Plaintiff's ADA claim.

### i. Defendant Has Not Established that Mr. George Was Not a Qualified Individual Under the ADA at the Time of His Termination.

Defendant's argument that Plaintiff was not a qualified individual under the ADA when he was terminated misses the mark. Defendant admits that "Plaintiff in this case was able to do his job, with the assistance of co-workers, but only when he was at work." [Dkt. No. 56 at 20.] Mr. George informed Defendant of his need to be absent from work two days after the ladder accident. Two weeks after his accident, Mr. George informed

Defendant he would be released to return to work on June 2, 2010 – eleven weeks after the accident. [Riddle Dep. at 30.]

Although attendance is an essential job function, courts generally agree that "medical leave may constitute a reasonable accommodation in some circumstances." *Preddie v. Bartholomew County Consol. Sch. Corp.*, No. 1:12-cv-00995-TWP-DML, 2014 WL 4259625, at *6 (S.D. Ind. Aug. 27, 2014); *see also Schwab v. N. Ill. Med. Cntr*, No. 12 C 8398, 2014 WL 2111124, at *9 (N.D. Ill. May 20, 2014) (finding that a reasonable jury could find that "a one-month leave of absence" was a reasonable accommodation on its face). Defendant's argument rests on the fact that Mr. George was absent from work and thus not "qualified" under the ADA. Defendant cites several cases for the proposition that "the EEOC has noted that an employer need not 'accept irregular, unreliable attendance'" and that "'[c]ommon sense dictates that regular attendance is usually an essential function in most every employment setting.'" [Dkt. No. 56 at 20 (citing *Jovanic v. In-Sink-Erator*, 201 F.3d 894 (7th Cir. 2000).] Yet, Defendant has set forth no facts to show that these cases are applicable here.

No evidence in the record shows that as a result of Mr. George's disability, his attendance was irregular. No record evidence shows that Mr. George was going to be absent from work after his return from medical leave. No evidence was submitted that Mr. George had a history of repeated absences of the kind not protected by the ADA. To accept Defendant's argument, the Court would have to find that a medical leave is not a reasonable accommodation and that the ADA does not protect individuals on leave because they are

not qualified individuals as a result of their absence. This is neither the letter nor the intent of the ADA.

### ii. A Genuine Issue of Material Fact Exists as to Whether Mr. George's Medical Leave Was a Reasonable Accommodation.

A genuine issue also exists as to whether Mr. George's medical leave was a reasonable accommodation. "The reasonableness of a requested accommodation is a question of fact." *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998). The Tenth Circuit has found that a medical leave less than that already required by the FMLA is a reasonable ADA accommodation. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002). Utility Trailers argues that it "was no longer able to hold the original position vacant" during Mr. George's medical leave because the "company was not a large operation with a lot of excess personnel who could cover for Plaintiff." [Dkt. No. 56 at 20-21.] Mr. George, on the other hand, argues that at the time of his leave, "there were between six and seven other employees working in the Parts Department who could have covered for George." [Dkt. No. 59 at 18.] In our view, sufficient evidence exists from which a reasonable juror could conclude that Mr. George's leave was a reasonable accommodation.[7]

---

[7] Furthermore, the record does not reflect any interactive process between Mr. George and Utility Services to determine an appropriate accommodation under the circumstances. *Haschmann*, 151 F.3d at 601 ("Under the ADA, '[o]nce an employer's responsibility to provide reasonable accommodation is triggered, the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances.'"). The record reflects at least a dispute as to the communications related to Mr. George's leave and reinstatement and at most evidence that no such interactive process occurred.

### b. A Genuine Issue of Material Fact Exists Whether Defendant Implemented a Thirty-Pound Lift Requirement Which Would Not Accommodate Plaintiff's Disability.

Plaintiff argues that Utility Trailers implemented a new thirty-pound weight lifting requirement while Mr. George was out on medical leave, which failed to accommodate Mr. George's disability. [Dkt. No. 59 at 18-19.] The parties disagree whether this requirement was established during Mr. George's leave or whether it had been in place while Mr. George was working. [*Compare* George Dep. at 107-08, 152 *with* Riddle Supp. Dec. at ¶ 9.][8] It is undisputed that Utility Trailers's termination letter to Mr. George provided that "[i]f you are completely released from your doctor wherein you can do manual labor, (lifting, etc.), you may reapply for a position within the parts department if one is available." [George Dep. at 101, Ex. 4.] A reasonable juror could conclude that the thirty-pound weight limit was new, imposed during Mr. George's medical leave, and that the termination letter indicated that Mr. George would not be accommodated. Consequently, summary judgment must be denied.

### c. Mr. George's Prima Facie Claim of Disability Discrimination.

Defendant's argument that Mr. George cannot make a *prima facie* cause of disability discrimination is duplicative of Defendant's challenges to Plaintiff's claim on the basis that

---

[8] Although Defendant argues that the timing of the thirty-pound weight limit is immaterial, Defendant included the issue of the thirty-pound weight limit in its undisputed material facts. [*See* Dkt. No. 56 at 6 ("The fact is that Utility Trailers had a 30-pound lift requirement for the parts counter position for decades prior to the move of Plaintiff into that position in 2007 or 2008.") (citing Riddle Supp. Decl. at ¶ 9).] As a result, Defendant already submitted that this fact was material to its request for summary judgment. After Plaintiff opposed this fact, Defendant cannot then argue that the Court should ignore the dispute as immaterial.

Plaintiff was not a "qualified individual" under the ADA, that it was not reasonable to have Plaintiff absent for work due to the staffing nature of the company and that Defendant's thirty-pound lift requirement was not new. "A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof." *Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citation omitted). "Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. Direct evidence requires an admission by the decision maker that his or her actions were based upon the prohibited animus." *Id.* (citations omitted). "Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Id.* (citations omitted). "Once a plaintiff has established a *prima facie* case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision. If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual." *Id.*

Defendant addresses only the indirect method of proving disability discrimination in its motion – arguing that Mr. George must show that "Defendant's proffered reasons are pretextual, defined as a lie (specifically, defined as a phony reason meant to cover up a disallowed reason)" and identify similarly situated coworkers outside of his protected class that were treated more favorably. [Dkt. No. 56 at 22-23.] Plaintiff does not specifically address whether he is proceeding under the direct or indirect method of proving disability

discrimination.  Instead, he argues that Utility Trailers's disability discrimination was the result of a failure to accommodate.[9]  Plaintiff appears to be proceeding on the direct method of proof based on his argument that Defendant terminated his employment because he was on medical leave.  However, genuine issues of material fact exist under either method of proof which preclude the entry of summary judgment.

The parties agree for purposes of summary judgment that Mr. George is disabled under the ADA's definition.  [Dkt. No. 56 at 18.]  The parties agree that Mr. George could perform the essential functions of his job, when he was present.  [Dkt. No. 56 at 20 ("Plaintiff in this case was able to do his job, with the assistance of co-workers, but only when he was at work.").]  However, a genuine issue of material fact exists as to whether Mr. George suffered an adverse employment action as a result of his disability – an essential element required under the indirect method of proving a disability discrimination claim.

Plaintiff was terminated from his position.  Plaintiff claims that a thirty-pound lifting requirement was imposed as a requirement for his former position while he was on leave.  [George Dep. at 107-08, 152.]  Moreover, Plaintiff contends that Utility Trailers said it would allow him to reapply only if he was released by his doctor and could do manual

_____

[9] In its assertion of facts Defendant contends that "Plaintiff in this action is not making a failure-to-accommodate claim."  Defendant misconstrues Mr. George's testimony.  No dispute exists that Utility Trailers accommodated Mr. George prior to the ladder accident.  However, as is made clear by Mr. George's response brief, the failure to accommodate claim relates to the termination of Mr. George after the ladder accident.  [*See* Dkt. No. 59 at 16-19.]  Specifically, Mr. George testified that he didn't think he should have been terminated.  [Dkt. No. 56 at 6 (citing George Dep. at 105).]

labor – which foreclosed his ability to be rehired. [*Id.* at 101, Ex. 4.] Additionally, Plaintiff asserts that Defendant retroactively cancelled Mr. George's health insurance benefits effective March 31, 2010. [Pltf. Ex. 6.] It is Plaintiff's position that these are adverse employment actions as a result of Mr. George's disability. [*See also* Part 3(b) *infra*.]

Defendant, on the other hand, maintains that Mr. George was invited to reapply for employment at Utility Trailers, but he never did. [George Dep. at 110-11, 122-23, 125, 187, Ex. 4.] Defendant represents that the thirty-pound lift requirement was always a requirement for that position and Mr. George had no reason to believe that Defendant would not accommodate his twenty-pound lift restriction. [Riddle Supp. Dec. at ¶ 9.] As a result, Defendant opines that Mr. George suffered no adverse employment action as a result of his disability. This question of fact is part of Plaintiff's *prima facie* indirect method of proving a claim for disability discrimination and is one for the jury to resolve; it cannot be decided on summary judgment.

A material question of fact similarly exists on a direct method for proving a claim for disability discrimination. As stated previously, a material question of fact exists as to whether Defendant failed to accommodate Mr. George's disability regarding his leave of absence after the ladder accident. [*See* Part 2(a)(ii) *supra*.] As a result, the same questions of fact exist in Mr. George's *prima facie* case for disability discrimination based on a direct method of proof. Specifically, a material question of fact exists as to whether Defendant's uncontroverted reason for terminating Plaintiff (his absence from work) is actionable under the ADA because an allegedly reasonable accommodation for Plaintiff's disability (a leave

of absence) was not provided.  As a result, we deny Defendant's Motion for Summary

Judgment on Plaintiff's ADA claim.[10]

### 3.    A Genuine Issue of Material Fact Exists to Preclude the Entry of Summary Judgment on Plaintiff's FMLA Interference Claim.

#### a.    Mr. George's Request for Leave.

"To prevail on a claim for FMLA interference, the employee must prove that: (1) he

was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he

was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take

FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled."

*Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012) (quotation marks and citation

omitted).   The only element raised in Defendant's Motion for Summary Judgment is

element four – that Mr. George did not provide sufficient notice of his intent to take FMLA

leave.[11]   A genuine issue of material fact exists as to whether Mr. George requested leave

for a condition that was likely an FMLA-qualifying condition.

---

[10] Defendant also argues that it has a legitimate, non-pretextual reason for taking its adverse action against Mr. George.  The dispute between the parties as to whether Mr. George suffered an adverse employment action precludes the necessity of our reaching this prong of the analysis (even assuming Mr. George were proceeding under the indirect method of proof).  Even so, the very basis of Mr. George's claim is that the reason for Utility Trailers's termination of Mr. George's employment was not legitimate, but instead a violation of the ADA because it failed to reasonably accommodate Mr. George's disability.  It is undisputed that Mr. George was terminated when "his attendance became an issue after his March 2010 injury" [Dkt. No. 56 at 24].  Yet, it is disputed whether this reason violates the ADA.  This creates genuine issues of material fact for the jury to determine at trial.

[11] Mr. George addresses each of the five prima facie elements of a claim for FMLA interference; however, because Defendant moved only for summary judgment on the basis of element four, the Court will address the genuine issue of material fact that exists with respect to that element alone.

Mr. George testified that he raised the issue of an FLMA leave with Ms. Brennan, Defendant's Human Resources Director:

Q       Did you ever actually request FMLA leave from the defendant?

A       It was questioned, yes.

Q       What do you mean it was questioned?

A       I asked if I should have that, and I was – said no.  They said no, you don't need that for this particular incident.

[George Dep. at 8-9.]   Although Defendant cites to later portions of Mr. George's deposition where he admitted that he never specifically requested an FMLA leave, a question exists with regard to Mr. George's conversation with Ms. Brennan where he asked about an FMLA leave, to wit, was that sufficient to trigger Utility Trailers's duty to conduct further investigation and inquiry to determine whether Mr. George's eleven-week leave qualified as FMLA leave.

"The notice requirements of the FMLA are not onerous.  An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions." *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006) (citing *Phillips v. Quebecor World RAI, Inc.,* 450 F.3d 308, 311 (7th Cir. 2006) (citing 29 C.F.R. § 825.303(b))).  "Indeed, 'the employee can be completely ignorant of the benefits conferred by the Act . . . .'"  *Id.* at 479 (quoting *Stoops v. One Call Commc'ns.,* 141 F.3d 309, 312 (7th Cir.1998)).  "The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition."  *Id.* (citing *Aubuchon v. Knauf Fiberglass, GmbH,* 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of a *probable* basis for FMLA

leave." (emphasis added)); *Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir. 2001) ("[E]mployers . . . are entitled to the sort of notice that will inform them . . . that the FMLA *may* apply." (emphasis added))). Two exceptions exist where an employer is obligated to provide medical leave, even though an employee has failed to even say he is sick – "when circumstances provide the employer with sufficient notice of the need for medical leave or when the employee is incapable of providing such notice." *Id.*

The undisputed facts show that Mr. George's ladder accident occurred at work and that Ms. Brennan came to the scene of the accident and accompanied Mr. George to Prompt Care. [George Dep. at 95-99.] It is undisputed that after Mr. George saw his treating physician who prescribed extensive physical therapy, Mr. George delivered that paperwork to Ms. Brennan two days after the accident. [*Id.* at 127.] Finally, it is undisputed that Mr. George asked Ms. Brennan if he should have FMLA leave and Ms. Brennan responded that "[b]ecause you're only going to be gone for a few weeks, you should be fine." [*Id.* at 126.] The parties also do not dispute that in 2009, Mr. George received and signed a copy of the FMLA. [*Id.* at 89-90, Ex. 3] It is also undisputed that Defendant's termination letter to Mr. George referenced Mr. George's "leave of absence." [*Id.* at 101, Ex. 4.]

The facts do not establish that this case is akin to those cited by Defendant where employers are "required to divine or investigate whether an employee is covered under the FMLA at any minor request for leave." [*See* Dkt. No. 56 at 27 (citing *Aubuchon*, 359 F.3d at 953).] Rather, the facts here show that Defendant was well aware of Mr. George's ladder accident and the paperwork from his doctor recommending he not work for eleven weeks. At the very least a material issue of disputed fact exists as to whether Mr. George put

Defendant on notice of the need for an FMLA leave.  Consequently, we deny Defendant's Motion for Summary Judgment as to Plaintiff's FMLA interference claim.

### b.      Prejudice to Mr. George.

Defendant argues that even if it committed a technical violation of the FMLA, Mr. George suffered no prejudice.  [Dkt. No. 56 at 27-29 (citing *Kinney v. Century Servs. Corp.*, No. 1:10-cv-000787-JMS-DML, 2011 WL 3476569, at *8-9 (S.D. Ind. Aug. 9, 2011) ("However, the FMLA does not entitle an employee relief unless the employee was prejudiced by the violation," i.e., "for an employee to recover under the statute, she must have suffered actual harm.").]  Defendant's argument hangs on the fact that Mr. George did not reapply to Utility Services after he was released to return to work by his doctor. [*Id.* at 29.]

Mr. George has shown a genuine issue of material fact for the jury's resolution on the issue of prejudice.  Mr. George was informed that his position was filled.  [George Dep. at 101, Ex. 4.]  Mr. George's health insurance benefits were retroactively canceled effective March 31, 2010.  [Pltf. Ex. 6; *see* 29 U.S.C.A. § 2614(c)(1) (providing that during any period that an eligible employee takes leave under FMLA, "[t]he employer shall maintain coverage under any 'group health plan' . . . for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave.").]  Mr. George was told that he could "*reapply* for a position within the parts department *if one is available*."  [Pltf. Ex. 6.] This case is distinguishable from *Kinney v. Century Services Corp. II*, cited by Defendant where the employee needed to deliver her work release to her employer and then her

26

employer would restore her job. No. 1:11-cv-00787-JMS-DML, 2011 WL 3476569, at *8 (S.D. Ind. Aug. 9, 2011). The evidence here shows that Defendant offered Mr. George only an opportunity to *reapply* with the company, not to reinstate him at his former position. Defendant concedes that Plaintiff was offered a Second Shift service position, which raises the question of whether the Second Shift position was the equivalent of Mr. George's First Shift parts position. Sufficient evidence exists in the record from which a reasonable juror could conclude that if Defendant violated the FMLA, Mr. George was prejudiced by the loss of his position and health benefits.

### Conclusion

For the foregoing reasons, a genuine issue of material fact exists to preclude the entry of summary judgment as requested by the Defendant. Consequently, Defendant's Motion for Summary Judgment [Dkt. No. 55] is thus <u>DENIED</u>.

IT IS SO ORDERED.


Date: ___10/31/2014___

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joel T. Nagle
BOSE MCKINNEY & EVANS, LLP
jnagle@boselaw.com

Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP
slaurin@boselaw.com

Alejandro Valle
GONZALEZ SAGGIO & HARLAN
LLP
vallea@gshllp.com

Quincy Erica Sauer
MACEY SWANSON & ALLMAN
qsauer@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com